FILED'06 MAR 08 17:23USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    CR No. 05-60072-AA

               Plaintiff,                    OPINION AND ORDER

    v.

CASEY DALE MAYER,

              Defendant.
_____

Frank Papagni
Assistant United States Attorney
701 High Street
Eugene, OR  97401
    Attorney for plaintiff

Craig Weinerman
Assistant Federal Public Defender
151 W. 7th Ave., Suite 510
Eugene, OR  97401
    Attorney for defendants

AIKEN, Judge:

    Defendant is charged with being a felon in possession of a

1    - OPINION AND ORDER

firearm in violation of 18 U.S.C. § 922(g)(1).  If convicted, defendant faces a mandatory minimum term of fifteen years imprisonment.  Id. § 924(e)(1).

Defendant moves to suppress all evidence and statements obtained as a result of the search of his residence on December 28, 2004.  Defendant argues that the search violated his rights under the Fourth Amendment to the United States Constitution. Specifically, defendant argues that the search warrant authorizing a search of his residence lacked probable cause, because it was based on observations obtained during an illegal and warrantless search of the curtilage surrounding his residence.  The government opposes the motion on the ground that parole officers had reason to believe defendant resided at that location and thus observed incriminating evidence from a legal vantage point.

On February 10, 2006, the court held an evidentiary hearing and received testimony from several witnesses.  Defendant's motion is denied.

## I.  FACTS

In February 2004, defendant was on post-prison supervision and probation as a result of 2001 and 2004 convictions for marijuana trafficking offenses.  Defendant had also been twice convicted for being a felon in possession of a firearm in 2000.  As conditions of his probation, defendant was required to "[p]ermit the probation officer to visit" defendant at his residence or place of work "to

2   - OPINION AND ORDER

conduct a walk-through of the common areas and of the rooms" occupied by or under the control of defendant and to "[c]onsent to the search of person, vehicle or premises upon the request of a representative of the supervising officer if the supervising officer has reasonable grounds to believe that evidence of a violation will be found . . . ." Government's Opposition to Motion to Suppress, Ex. 3, p. 4.

On February 10, 2004, Lane County Parole and Probation Officer (PPO) Melinda Rauch conducted a home visit with defendant at 605 Davis in Eugene, Oregon, where defendant had been purportedly living for several months. During previous periods of supervision, defendant had listed his residence as 103 Hansen Lane in Eugene. Shortly thereafter, defendant absconded from post-prison supervision and probation.

On February 24, 2004, Rauch received a confidential telephone call from defendant's neighbor on Hansen Lane, who reported that defendant was living at 103 Hansen Lane and likely selling drugs due to the frequency of short-stay traffic. Rauch knew the neighbor and believed the neighbor to be reliable.

In April 2004, two arrest warrants were issued authorizing defendant's arrest for absconding from post-prison and probation supervision.

Based on the information from defendant's neighbor, Rauch drove by 103 Hansen Lane on a few occasions in an attempt to see

3    - OPINION AND ORDER

defendant or his vehicle at that location. Rauch subsequently called the neighbor and asked if defendant still resided at 103 Hansen Lane, and the neighbor confirmed that defendant lived there.[1] However, Rauch never positively identified defendant at 103 Hansen Lane.

On December 28, 2004, Lane County PPO supervisor Susan McFarland received a telephone call from an anonymous male informant who stated that he knew the whereabouts of an "absconded parolee" – identified by the caller as defendant. The caller stated that defendant was living at 103 Hansen Lane, that he could "guarantee" defendant had a gun and probably a marijuana grow at the residence, and that defendant had an escape route out the back door if officers knocked on the front door. When asked how he knew this information, the caller stated that he must remain anonymous because defendant had a gun and would kill him if defendant discovered that the caller had notified Lane County Parole and Probation.

From defendant's chronological file, McFarland verified that defendant had absconded from parole and probation and had been reported living at 103 Hansen Lane, and that defendant's criminal history included convictions for marijuana manufacturing, possession of firearms, and assault.

------------------------------------------------------------

[1]Rauch could not recall the dates on which she attempted to locate defendant or recontacted his neighbor.

4    - OPINION AND ORDER

Because of the unavailability of law enforcement officers, McFarland and several other PPOs went to 103 Hansen Lane to execute the warrants for defendant's arrest at approximately 11:00 a.m. Two PPOs entered defendant's back yard through an open gate and positioned themselves at the back of the residence while PPOs Shawn Hoban and Aaron Rauschert remained at the front door. McFarland noticed some people across the street moving household items and asked one of them if he knew defendant. The man indicated that defendant lived alone at 103 Hansen Lane. Rauschert observed McFarland speaking to the neighbors across the street, although he could not recall if she had relayed the substance of the conversation.

After the PPOs were in position, Hoban and Rauschert identified themselves and instructed defendant to come out while knocking loudly on the front door.

Rauschert heard the sounds of a television and of someone moving from inside the house. After several minutes, McFarland went to the back of the house, where she observed an eighteen-inch gap in the fence that she believed to be the escape route described by the anonymous caller. McFarland also observed a bright light and heard a loud electrical buzzing sound coming from a vent on the house. When McFarland looked through the vent, she saw a marijuana plant and smelled marijuana.

McFarland returned to the front of the house and told

Rauschert to go into the back yard. The PPOs stayed in position until Lane County sheriff's deputies arrived.

Sheriff's deputies subsequently arrived and surrounded the residence. McFarland told Deputy Sheriff Eric Franklin about her observations and that she had smelled marijuana at the back of the house. Franklin positioned himself near the rear of the house outside of the fence to the backyard. Through the slats of the fence, Franklin observed a marijuana plant and PCV pipes. Franklin had a picture of defendant and handed it through the fence slats to Deputy Sheriff David Thomas, who was positioned in the backyard. Thomas told Franklin that he had seen defendant inside of the house.

Using a loud speaker, the deputies instructed defendant to leave the residence. After approximately ninety minutes, defendant came out of the house with his brother. Defendant admitted that a marijuana grow was in the house, but defendant denied that he had any firearms. Defendant refused consent to search the residence.

Based on the PPOs' and sheriff deputies' observations, a search warrant was obtained to search the residence for evidence of marijuana trafficking and firearms. Deputy Sheriff Marvin Combs prepared the affidavit in support of the search warrant, stating that: "Deputy Eric Jason Franklin of the Lane County Sheriffs Office arrived on scene and was told by Parole and Probation Officers on scene that they believed there were subjects inside the

residence and that they could smell growing marijuana." Government's Opposition, Exhibit 10. Further Combs stated that "Deputy Franklin advised me that when he arrived and was sent to a perimeter location near the back of the house that he could detect an odor of growing marijuana" and that "he observed an already harvested mature marijuana plant" and "PVC pipe in the back yard consistent with a hydroponic marijuana grow." Id.

Upon execution of the warrant, officers found marijuana plants and a .45 caliber pistol hidden in the attic insulation.

## II. DISCUSSION

Defendant argues that the PPOs lacked probable cause to believe that he was present at 103 Hansen Lane, and that their entry onto the curtilage of the premises constituted a warrantless search in violation of the Fourth Amendment. Absent the observations gleaned from entry onto the curtilage, defendant contends that the search warrant lacked probable cause that evidence of drug dealing or firearms would be found at 103 Hansen Lane. Therefore, defendant maintains that evidence of the firearm must be suppressed.

The government concedes that defendant's backyard was enclosed by a fence and was in close proximity to the house. Therefore, the backyard is considered curtilage and deserving of Fourth Amendment protection. See United States v. Dunn, 480 U.S. 294, 300-01 (1987); United States v. Romero-Bustamente, 337 F.3d 1104, 1107-08

7   - OPINION AND ORDER

(9th Cir. 2003) (a small, enclosed yard adjacent to and located behind a house falls within the curtilage as a matter of law). Thus, the question is whether the PPOs lawfully entered defendant's backyard.

Defendant argues that the warrants authorizing his arrest provided "the limited authority" to enter defendant's residence and its surrounding curtilage only if the PPOs had probable cause that he was inside the residence or elsewhere on the premises.[2]  See Payton v. New York, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."); United States v. Underwood, 717 F.2d 482, 484 (9th Cir. 1983) (en banc) (warrantless entry of third-party residence does not violate the Fourth Amendment if police have an arrest warrant and "reason to believe" that the defendant is present); see also United States v. Gorman, 314 F.3d 1105, 1114-15 (9th Cir. 2002) (equating "reasonable belief" with probable cause). Based on the facts presented, it is unclear whether the PPOS had probable cause to believe defendant was inside the residence prior to entering the backyard. Regardless, I find that defendant's status as an absconded probationer authorized entry into the backyard if the PPOs had

---

[2]Defendant does not contest the validity of the warrants.

probable cause that defendant resided at 103 Hansen Lane.

It is well-established that probationers do not enjoy the same "freedoms enjoyed by law-abiding citizens." United States v. Knights, 534 U.S. 112, 119 (2001); Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). Consequently, no more than a reasonable suspicion of criminal activity is necessary to conduct a search of a probationer's house, particularly when consent to a home search is a condition of probation. Knights, 534 U.S. at 121; United States v. Stokes, 292 F.3d 964, 967 (9th Cir. 2002).

Further, "[w]here a law enforcement officer's observations support 'a reasonable belief' that a parolee resides at a particular address, this 'provide[s] a reasonable basis for [a parole] search.'" Motley v. Parks, 432 F.3d 1072, 1078-79 (9th Cir. 2005) (quoting United States v. Dally, 606 F.2d 861, 863 (9th Cir. 1979) (per curiam)); see also United States v. Harper, 928 F.2d 894, 896 (9th Cir. 1991) (probation search was lawful because officers had probable cause to believe that the probationer lived at the residence); Dally, 606 F.2d at 863 (a "reasonable belief" that the parolee had moved to the residence in question provided a "reasonable basis" for the parole search).

Here, the PPOs had the following information that defendant resided at 103 Hansen Lane:  1) in 2001, defendant provided 103 Hansen Lane as his address while on post-prison supervision; 2) in February 2004, defendant's PPO was informed by his neighbor that

defendant was residing at 103 Hansen Lane and distributing drugs from that address; 3) on December 28, 2004, an anonymous caller informed McFarland that defendant, whom the caller knew to have absconded from parole, could be located at 103 Hansen Lane; and 4) on December 28, 2004, PPO McFarland was told by a man who lived across the street that defendant resided alone at 103 Hansen Lane.

Defendant argues that the government cannot rely on the anonymous phone call received on December 28, 2004, because no efforts were made to establish the caller's veracity or the reliability of his information.  However, through defendant's chronological file, McFarland confirmed the anonymous informant's accurate knowledge of defendant's status and criminal history. Further, the address and information provided by the anonymous caller was consistent with that provided by defendant's neighbor in 2004, and defendant had previously provided 103 Hansen Lane as his address while on parole.  Finally, prior to entering defendant's backyard, McFarland contacted a neighbor across the street and confirmed that defendant lived at 103 Hansen Lane.[3]  I therefore

_____

[3]Although McFarland testified that PPOs entered the backyard before she spoke with the neighbor across the street, it was McFarland who looked inside the vent and saw a marijuana plant inside defendant's residence and who relayed her observations to Franklin.

I further note that the gate to defendant's backyard was open when McFarland and other PPOs entered the backyard, and Deputy Franklin testified that he observed evidence of marijuana manufacturing in plain view through slats of the fence

10   - OPINION AND ORDER

find that the totality of the circumstances provided probable cause that defendant resided at 103 Hansen Lane.

Further, defendant had absconded from post-prison and probation supervision, and the Lane County Parole and Probation Office had twice received information that defendant was selling drugs from his residence at 103 Hansen Lane. Thus, the PPOs warrantless entry into defendant's backyard was authorized by defendant's probation conditions and supported by reasonable suspicion and did not violate defendant's rights under the Fourth Amendment. See Knights, 534 U.S. at 122 (a warrantless search of a probationer's apartment was reasonable under the Fourth Amendment where it was authorized by a condition of his probation and supported by reasonable suspicion); Dally, 606 F.2d at 863.

                              CONCLUSION

For the foregoing reasons, defendant's Motion Suppress Evidence (doc. 14) is DENIED.

IT IS SO ORDERED.

Dated this ___8___ day of March, 2006.


                    _____
                              Ann Aiken
                    United States District Judge


_____

surrounding defendant's back yard while positioned outside of the fence.

11  - OPINION AND ORDER